IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MADHAVAN PISHARODI, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. B-04-119 |
| VALLEY BAPTIST MEDICAL CENTER; BEN M. MCKIBBENS, M.D.; JAMES G. SPRINGFIELD; ERIC SIX, M.D.; ALEJANDRO BETANCOURT, M.D.; AND CHRISTOPHER HANSEN, M.D., | § § § § § § § § § | |
| Defendants. | § | |

**OPINION AND ORDER**

BE IT REMEMBERED that on October 13, 2005, the Court considered the Defendants' Motion for Summary Judgment. Dkt. No. 12. The Court hereby **GRANTS** the motion as to all Defendants. Dkt. No. 12.

**I. Background**

Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 12. This motion was filed on April 18, 2005. *Id.* Plaintiff never responded. Under Chamber Rules, Plaintiff was required to file a response within 20 days — a time period which ended May 9, 2005. *See* Chamber Rule 5(C); Fed. R. Civ. P. 6(a). Local rules state that this failure to respond constitutes "a representation of no opposition." Local Rule 7.4. However, because this is a motion for summary judgment and Plaintiff has submitted filings subsequent to this motion, *see* Dkt. No. 13, the Court finds it appropriate to consider the motion on its merits.

This case was originally brought in state court, in the 103rd Judicial District for Cameron County, Texas. *See* Plaint. Original Complaint. Defendants removed the case pursuant to federal question jurisdiction on July 13, 2004. Dkt. No. 1.

Plaintiff is a neurosurgeon with active practices in Brownsville, Harlingen, and Mission, Texas. Plaint. Original Complaint, ¶ 12. One of the hospitals at which Plaintiff practiced was Valley Baptist Medical Center ("VBMC"). *Id*. The individual Defendants are all staff members at VBMC. Dkt. No. 12, at 4. Plaintiff claims that he is a highly qualified neurosurgeon who has not succeeded at the same rate as similarly-skilled physicians. *See* Plaint. Original Complaint, ¶¶ 12–13. He also claims that he "has been forced to deal with relentless hostilities and unreasonable encumbrances in the performance of his professional duties" and that "Defendants have subjected [him] to needless, harassing peer reviews," have published false defamatory statements about him, have interfered with his contracts, and have tried to damage his reputation. *Id*. at ¶ 13. Plaintiff contends that Defendant Dr. Six is the driving force behind these practices, that Dr. Six has used racial slurs in Plaintiff's colleagues' company, and that VBMC has "seen fit to ignore Plaintiff's frequent complaints and to look the other way." *Id*. at ¶ 14. Plaintiff also makes a significant number of additional allegations:

- Defendants have engaged in a pattern of discriminatory behavior for years.
- Dr. Six blocked him from obtaining privileges at VBMC by refusing to serve as his required backup, although Dr. Six serves as backup for others.
- Defendants threatened to destroy his practice if he applied for privileges at VBMC or opened a practice in Harlingen.
- Defendants falsely accused him of causing a patient's death, thereby causing a wrongful death suit to be filed against him.
- "Defendants delayed credentialing of another physician" because Plaintiff was to serve as that physician's backup.
- Defendants falsely accused him of failing to fulfill his Emergency Room ("ER") responsibilities, thereby preventing him from gaining privileges at VBMC.
- Plaintiff was humiliated by being forced to prove that he fulfilled his duties.

- Plaintiff was only given provisional privileges for six months, as opposed to the one year privileges required by VBMC bylaws.
- Another neurosurgeon was granted privileges for one year.
- Plaintiff's "privileges were phrased in intimidating terms," while others' privileges were not.
- Plaintiff's privileges were not renewed.
- Plaintiff was kept off the ER call list for one year, although he had a contract to work in the ER.
- Plaintiff was reprimanded for referring a patient to Driscoll Children's Hospital, although this action was taken for good reason and other physicians were permitted to decide which patients to accept.
- Defendants denied privileges to Plaintiff's nurse, although she was qualified.
- Plaintiff's colleague was denied privileges to perform intraoperative monitoring, although other physicians at VBMC performed this task.
- Plaintiff was excluded from the ER despite instructions from the Chief of Staff to include him in the schedule.
- Defendants tried to bribe one of Plaintiff's backup physicians to drop his backup coverage.
- Defendants terminated his contract to participate on VBMC's First Response Team, and they did so without authority.
- Plaintiff was harassed by Defendants' refusal to finalize the hospital board's decision to allow him to take ER calls.
- Plaintiff was not permitted to educate the VBMC staff regarding a surgical technique designed by Plaintiff.
- Plaintiff was not given a customary welcome dinner.
- Dr. Betancourt was given a welcome dinner.
- Defendants openly planned to "oust Plaintiff from VBMC."
- Defendants falsely told the medical director that Plaintiff went to India without securing backup coverage.

- Plaintiff's nurse was suspended and he received a letter of reprimand because Defendants falsely accused his nurse of the practice of medicine without a license.
- Defendant Betancourt took charge of the care of one of Plaintiff's patients, discharged the patient, and accused Plaintiff's nurse of ordering the discharge.
- Defendants reduced his on-call days and gave them to Defendant Betancourt.
- Defendants denied privileges to two qualified neurosurgeons who agreed to serve as his backup.
- Plaintiff was removed from coverage for lack of backup coverage, although he had remained on the schedule without backup for over a year.
- Plaintiff was excluded from VBMC's advertising.
- Plaintiff was forced to find backup coverage when his request to not be assigned ER duty close to his trip to India was ignored.
- Plaintiff's complaints to VBMC were ignored or only superficially addressed.
- Plaintiff was not given a convenient ER schedule despite his desire to host a professional conference.
- Plaintiff was subjected "to numerous unnecessary and unfounded case reviews."
- The case reviews were a source of anguish, embarrassment, and defamation to Plaintiff's reputation.

*See id.* at ¶¶ 15–43.  Plaintiff asserts that this conduct constitutes discrimination in employment conduct, discrimination in his right to make and enforce contracts, intentional infliction of emotional distress, and negligence.  *See id.* at ¶¶ 44–50.  Defendants now move for summary judgment on all claims.  Dkt. No. 12.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the movant is able to show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Arbaugh v. Y&H Corp., 380 F.3d 219, 222 (5th Cir. 2004); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891(E.D. Tex. 2004).  All factual issues must be resolved in favor of the non-moving party, and the Court is to

view the evidence in a light most favorable to the non-moving party.  *See Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891; Heckler v. Product Dev. Corp., 2003 WL 22961214, *2 (N.D. Tex. 2003) (unpublished).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that there are no genuine issues of fact.  *See Lockett*, 337 F. Supp. 2d at 891.  If the movant meets this burden, the non-movant must then come forward with specific facts to show that there is a genuine issue of fact.  *Id.*; *see also Arbaugh*, 380 F.3d at 222.  The non-movant may not rely on mere conclusory allegations or on the pleadings.  *Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891.  Rather, the existence of specific evidence must be demonstrated to the court.  *Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891.  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to render a verdict for the non-moving party.  *Arbaugh*, 380 F.3d at 222.  "Summary judgment is appropriate, however, if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Id.* at 222–23 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### III. Analysis

Defendants move for summary judgment of all four claims in this case.  Dkt. No. 12.  Defendants rely on a number of bases in support of their motion for summary judgment.  *Id.*  Each claim, and the bases relied on by defendants for summary judgment of that claim, will be addressed in turn.

#### A. Claims Under Title VII

Plaintiff first claims that defendants discriminated against him in violation of 42 U.S.C. § 2000e-2 ("Title VII").  Plaint. Original Complaint, ¶¶ 45–46.  Plaintiff asserts that Defendants discriminated against him in his compensation, terms, conditions, and

privileges of employment and by classifying him in terms of his national origin. *Id.* Defendants respond by asserting four bases which they claim defeat Plaintiff's cause of action: (1) Plaintiff is not an employee of any of the Defendants; (2) many of Plaintiff's claims are barred by the applicable statute of limitations; (3) Plaintiff cannot establish a *prima facie* case of Title VII discrimination; and (4) Defendant provided a legitimate reason for its conduct, and Plaintiff cannot demonstrate that it is pretextual. Dkt. No. 12, at 7–15. The Court finds that summary judgment is appropriate based on Defendants' first, third, and fourth arguments, each of which will be addressed below.[1]

### 1. Plaintiff Was Not an Employee of VBMC or the Individual Defendants

The first requirement for a plaintiff to bring an action under Title VII is that the plaintiff must have an employment relationship with the defendant. *See* Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003) ("Title VII is available only against an employer."). The statute itself, by the plain meaning of its terms, requires an employer-employee relationship. *See* 42 U.S.C. § 2000e-2(a) (2005) ("*Employer* practices. It shall be an unlawful employment practice for an *employer* . . . ." (emphasis added)). Thus, it is clear that a proper defendant in a Title VII case would have to be the plaintiff's employer.

The question often arises whether a plaintiff is an employee or an independent contractor. *See, e.g.*, EEOC v. Fawn Vendors, Inc., 965 F. Supp. 909, 910 (S.D. Tex. 1996) (addressing the question of whether the complainant was an employee or an independent contractor of the defendant). The Fifth Circuit resolves this question by applying the "economic realities/common law control" test. *Id.* (citation omitted). Under this test, the Court must consider "the economic realities of the work relationship" and

---

[1] Because the Court finds that summary judgment is appropriate based on Defendants' other arguments, the Court will not address Defendants' argument based on the requirement that Plaintiff must file suit with the Equal Employment Opportunity Commission ("EEOC") within 300 days of learning of the allegedly discriminatory conduct. *See* Dkt. No. 12, at 9–11. Furthermore, the Court is not able to properly address this argument, as neither party has provided the Court with any specific dates on which any of this conduct was alleged to have occurred.

the amount of control the party for whom the work is being done has over the person performing the work.  *Id.* at 911.  There are also eleven other factors a court must take into account:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the Job; (6) the manner in which the work relationship is terminated; *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* (quoting Diggs v. Harris Hospital-Methodist, Inc., 847 F.2d 270, 272–73 (5th Cir. 1988).  No one factor is determinative, but the "right to control" is the most important.  *Id.*  Finally, the right to control "is evaluated by focusing on whether the alleged employer has the right to hire and fire the individual, the right to supervise the individual, and the right to set the individual's work schedule."  *Id.* (citation omitted).

### *i. VBMC*

VBMC is the most likely Defendant to be considered an employer of Plaintiff.  Therefore, the Court will begin its analysis by determining whether Plaintiff qualifies as an employee of VBMC.

Plaintiff works as a neurosurgeon at VBMC.  Plaint. Original Complaint, ¶¶ 12–13.  This is a highly specialized field.  Neurosurgeons are not generally supervised during their work, at least not in a manner such that any control is exercised over their work or their judgment.  It also requires a significant amount of skill and education.  Therefore, the first two factors weigh against a finding that Plaintiff is an employee.

VBMC furnishes the equipment and the place of work. This factor favors a finding that Plaintiff is an employee.

Plaintiff has worked at VBMC since November 1999. Deposition of Dr. Madhavan Pisharodi, June 9, 2004, at 28. He is generally paid by his patients, although he received a fee for agreeing to be a part of the First Response Team and he is paid by the day for his work in the ER. Affidavit of Ward Cook, at ¶¶ 3, 7; Dkt. No. 12, at 8–9; Plaintiff's Original Complaint, ¶ 23. Thus, factors four and five are neutral, as payment by patients leans toward independent contractor status and payment by day leans toward employee status.

Plaintiff was never terminated. He makes no allegation that he was fired. Furthermore, the question of annual leave is inapplicable, as Plaintiff has no duty to work in the hospital, bring new patients to the hospital, or even come to the hospital at all. Affidavit of Ward Cook, ¶¶ 7, 8; Dkt. No. 12, at 8. This also shows that the work is not integral to the "employer," because he has no duty to work at VBMC. He merely holds privileges to see his patients there if he so chooses. Affidavit of Ward Cook, ¶¶ 7, 8; Dkt. No. 12, at 8. This also means that he cannot accumulate retirement benefits. Thus, all of these factors indicate that Plaintiff was an independent contractor.

Plaintiff pays his own taxes and has his own tax identification number. Affidavit of Ward Cook, ¶ 6. Plaintiff also has provided no evidence that the parties intended for Plaintiff to be an employee of VBMC. Therefore, these last two factors also point away from finding that Plaintiff is an employee.

As for the economic realities, it is true that Plaintiff must have hospital staff privileges in order to continue his practice. Plaintiff needs a place to perform surgery if he is to continue to practice. However, Plaintiff has submitted no evidence that privileges *at VBMC* are necessary to his practice. Plaintiff himself states that he practices in Mission and Harlingen, as well as Brownsville. Plaint. Original Complaint, ¶ 12. He also has privileges at several other hospitals. Deposition of Dr. Madhavan Pisharodi, June 9, 2004, at 26–30. Without a showing as to why staff privileges at this hospital are necessary, this Court finds that the economic realities favor a finding that

Plaintiff is an independent contractor.  *Cf.* Diggs v. Harris Hosp.-Methodist, Inc., 847 F.2d 270, 273 (5th Cir. 1988) ("There was no evidence . . . that privileges at Harris Hospital were necessary to her practice . . ..").

Finally, two of the three factors for determination of the right to control indicate that Plaintiff was an independent contractor.  Although his staff privileges could be revoked by VBMC (effectively "firing" him), VBMC had no right to supervise him[2] and could not control his work schedule.  Affidavit of Ward Cook, ¶ 8.  Plaintiff was free to work if and when he so desired and to work in the manner of his choosing.  *Id.* at ¶¶ 7, 8.  Thus, VBMC had no right to control him.

Thus, upon weighing all of the factors, this Court finds that Plaintiff was an independent contractor and not an employee of VBMC.  This Court also notes that its decision is bolstered by the holding in *Diggs v. Harris Hospital-Methodist, Inc.*, 847 F.2d 270 (5th Cir. 1988).  In that case, Diggs, a black, female physician, sued a hospital that had terminated her staff privileges for violation of Title VII.  *Diggs*, 847 F. Supp. 2d at 271.  The Court applied the hybrid economic realities/common law control test to determine whether Diggs was an employee or an independent contractor.  *Id.* at 272–73.  The Court in that case found that Diggs had not shown that the denial of staff privileges at the Defendant hospital "hampered her ability to obtain staff privileges at any other Fort Worth hospital" and that she had staff privileges at other hospitals.  *Id.* at 273.  The Court also found that "the hospital [did] not direct the manner or means by which Diggs render[ed] medical care," it did not require her to admit patients, and it did not pay for her services.  *Id.*  Therefore, she was not under the hospital's control.  *Id.*  Based on these factors, the Court held that Diggs was not an employee of the hospital.  *Id.* at 274.

---

[2]VBMC could supervise him in the sense of making sure he was not engaging in malpractice, but it could not control his methods of working, reject his medical judgments, or substitute its own decisions and operations in place of Plaintiff's.  Affidavit of Ward Cook, ¶¶ 7, 8; *see also Diggs*, 847 F. Supp. 2d at 273 ("[W]hile it imposes standards upon those permitted to hold staff privileges, the hospital does not direct the manner or means by which Diggs renders medical care.").

Therefore, this Court finds that Plaintiff cannot maintain a Title VII action against VBMC, because Plaintiff does not qualify as an employee. Summary judgment as to this issue is proper for VBMC.

### ii. Individual Defendants

Plaintiff also is not an employee of any of the individual Defendants. All of these Defendants were members of VBMC's staff. *See* Affidavit of Ward Cook, ¶ 10; Dkt. No. 12, at 4. "[R]elief under Title VII is available only against an employer, not an individual supervisor or fellow employee." Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003). Thus, Plaintiff is not an employee of the individual Defendants and cannot maintain a Title VII action against any of them in their individual capacities.

### 2. *Prima Facie* Case for Title VII Discrimination

As an alternative ground for its holding, this Court finds that Plaintiff has failed to make a *prima facie* case of discrimination – a requirement for bringing a claim under Title VII. *See* Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). To make this showing, Plaintiff must establish that he "(1) is a member of a protected class; (2) was subject to an adverse employment action; (3) was qualified for [his] position; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably than [him]." *Id*. at 891–92 (citations omitted). In this case, Plaintiff clearly satisfies elements one and three – he is of Indian ethnicity, which qualifies under national origin discrimination, and he is qualified for his position. However, Plaintiff cannot establish elements one or three for either VBMC or the individual Defendants.

To establish the second element, Plaintiff must show that he suffered "an adverse employment" action. "[A]n adverse employment action means an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating." Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 (5th Cir. 2003). Of all the numerous allegations made by Plaintiff, the only one that comes close to alleging an adverse employment action can be found in ¶ 28: "Defendants unilaterally, arbitrarily, and without authority, terminated Plaintiff's valid contract with VBMC to

10

participate on said hospital's First Response Team." Plaint. Original Complaint, ¶ 28. All of the other allegations relate to delays, hindrances, nuisances, humiliations, or similar things, or to actions against other people.[3] Thus, Plaintiff's ability to establish the second element must stand or fall with this one paragraph.

The first thing that can be seen from this paragraph is that it does not allege anything against VBMC. In fact, it specifically alleges that the individual Defendants engaged in the alleged conduct *without authority*. *Id*. Therefore, Plaintiff's Title VII claim against VBMC fails for want of establishing the second element. Furthermore, even as applied to the individual Defendants, this allegation does not amount to an adverse employment action. This alleged conduct does not have any bearing on hiring, granting leave, discharging, or promoting Plaintiff. Plaintiff still had privileges at the hospital. As for compensation of Plaintiff, the conduct alleged may have detrimentally impacted upon Plaintiff's level of compensation. However, Plaintiff's claim still fails for two reasons: (1) Plaintiff fails to allege sufficient details regarding this conduct, such as when the conduct took place, how much he earned, or how often, if ever, he actually participated on the First Response Team; and (2) Plaintiff himself alleges that he was not included in the First Response Team's actual activities. *See* Plaintiff's Original Complaint, ¶¶ 23, 26. If Plaintiff did not actually work on the First Response Team, as Plaintiff seems to allege, his compensation could not have been affected by the alleged conduct.[4] Thus, this conduct does not amount to an adverse employment action.

---

[3]The Court notes that the allegations regarding attempts to prevent Plaintiff from being granted staff privileges could be considered adverse employment actions. However, as Plaintiff was eventually granted staff privileges at VBMC, the Court finds that these actions, even if taken as true, do not amount to adverse employment actions. Moreover, Plaintiff fails to provide the Court with any information regarding when these alleged actions took place or to provide sufficient detail in his allegations for the Court to find that this conduct constitutes an adverse employment action.

[4]Of course, this conduct may then result in an adverse hiring decision, but inclusion on the First Response Team is not an action that falls within the rubric of "hiring." Rather, Plaintiff already had staff privileges, the granting, denial, and revocation of which comprised the hiring and firing decisions. Moreover, Plaintiff offers

Plaintiff's claim also fails to satisfy the fourth element, that similarly situated employees were treated more favorably than him. To establish this element, Plaintiff must show that another employee was given preferential treatment under "nearly identical circumstances." *Lockett*, 337 F. Supp. 2d at 897. Plaintiff makes several allegations which could possibly satisfy this requirement. *See* Plaint. Original Complaint, ¶¶ 16, 17, 21, 24 (First ¶ numbered 24), 31. One allegation by Plaintiff is that Defendant Dr. Six refused to serve as Plaintiff's backup, despite serving as backup for others. *Id.* at ¶ 16. However, this conduct does not satisfy the fourth element. Dr. Six is free to offer his services as backup to whomever he so chooses. Plaintiff has no right to force Dr. Six to serve as his backup. Plaintiff was free to find other qualified backup. In another allegation, Plaintiff asserts that Dr. Six threatened to destroy his practice, but did not make such threats to others. *Id.* at ¶ 17. The Court finds that this is a stray remark, is not actionable, and does not satisfy this element. *See* Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343–44 (5th Cir. 2002). In ¶ 21, Plaintiff claims that he was granted provisional privileges for only six months, while another neurosurgeon was granted provisional privileges for one year. Plaint. Original Complaint, ¶ 21. Plaintiff also states that his privileges "were phrased in intimidating terms." *Id.* In ¶ 24, Plaintiff claims that he was reprimanded for sending a patient to another hospital, although other physicians were free to decide which consultations to accept and which to reject. *Id.* at ¶ 24. Finally, in ¶ 31, Plaintiff alleges that he did not receive the customary welcome dinner. *Id.* at ¶ 31. All of these claims fail for lack of specificity. Plaintiff does not assert when these allegations took place, what the situation and circumstances surrounding the conduct was, or who received different treatment. Plaintiff fails to provide sufficient details for this Court to determine what the situation was, let alone whether someone else was treated more favorably in "nearly identical circumstances." Therefore, this Court finds that Plaintiff has not met the requirements of the fourth element for a claim under Title VII.

---

no basis for why he should be on the First Response Team or evidence that he would have been an active participant but for the individual Defendants' actions.

### 3. Failure to Rebut Defendant's Proffered Justification

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* violation of Title VII, Plaintiff has provided no evidence that Defendants' justifications for its conduct are a pretext for discriminatory action.

In a Title VII case, a plaintiff must establish his *prima facie* case. *See* Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004) ("[A] plaintiff must first present a *prima facie* case of discrimination."). If the plaintiff is successful, then the burden shifts to the defendant to offer a valid reason for its actions. *Id.* at 892. Finally, if the defendant makes this showing, the burden shifts back to the plaintiff to show that the defendant's reasons are actually a pretext for an illegal motive. *Id.* Only if the plaintiff satisfies these requirements will its claim survive summary judgment. *Id.*

In this case, Defendants have provided several justifications for the conduct at issue. Dkt. No. 12, at 14–15. Defendants assert that they acted in accordance with their bylaws and with state and federal law. *Id.* at 14. Plaintiff submitted no response to Defendants' Motion for Summary Judgment. Therefore, Plaintiff has not made any showing that Defendants' justifications are a pretext. Summary judgment of Plaintiff's first claim is appropriate as to all Defendants.

### B. Claims Under 42 U.S.C. § 1981

In addition to his claims under Title VII, Plaintiff asserts that Defendants engaged in national origin discrimination against him in violation of 42 U.S.C. § 1981. Plaint. Original Complaint, ¶¶ 47 (both ¶ numbered 47). In particular, Plaintiff contends that Defendants interfered with his contractual opportunities to be a member and to participate on VBMC's First Response Team. *Id.* Plaintiff further contends that the reason for this discrimination was his national origin. *Id.* Defendants again put forth several responses to Plaintiff's claim: (1) many of the incidents relied upon by Plaintiff occurred outside the applicable statute of limitations; (2) the individual Defendants cannot be liable for § 1981 claims; (3) Plaintiff failed to make a *prima facie* case of national origin discrimination; and (4) national origin discrimination is not a proper basis for a claim under § 1981. Dkt. No. 47, at 15–18. The Court will consider these

arguments in reverse order. However, because the Court finds summary judgment is appropriate based on defenses three and four, the Court does not reach Defendants' first or second defenses.[5]

### 1. National Origin Discrimination Is Not a Basis for a § 1981 Claim

Section 1981 claims are only available for discrimination based on race. *See, e.g.*, Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) ("If respondent . . . can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981."); Arguello v. Conoco, Inc., 330 F.3d 355, 358 (5th Cir. 2003) (requiring a plaintiff to establish his or her status as a *racial* minority to succeed on a § 1981 claim (emphasis added)); Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 342 (5th Cir. 2002) ("[Dr. Patel] still fails to create a question of fact for the jury that *race* motivated his suspension." (emphasis added) (citation omitted)); Dardar v. Potter, 2004 WL 422008, *1 (E.D. La. 2004) ("[P]laintiff lacks standing to sue under 42 U.S.C. § 1981 for the reasons that plaintiff has not alleged any claim related to *race* . . . ." (emphasis added)). Because the purpose of § 1981 was "to eradicate all discrimination against blacks . . .[,] racial animus is a necessary element of a claim under this section." *Dardar*, 2004 WL 422008, at *6. Furthermore, "the plain text of § 1981 compels the conclusion that it is inapplicable to discrimination which is based upon allegations wholly unrelated to race." *Id*.

In this case, Plaintiff grounds his § 1981 claim on discrimination "because of Plaintiff's national origin." Plaint. Original Complaint, ¶ 47 (first ¶ 47). Plaintiff does not make any allegations of discrimination under § 1981 other than those based on his national origin. National origin discrimination is not racial discrimination. *See Al-Khazraji*, 481 U.S. at 613 (stating that Plaintiff needed to assert discrimination based on race, "rather than solely on the place or *nation of his origin*" (emphasis added)).

---

[5]The Court again notes that even if it were necessary, the Court could not properly address the statute of limitations argument because neither party has provided any evidence of when the alleged conduct occurred.

14

Therefore, Plaintiff cannot establish a viable § 1981 claim based on his claim of national origin discrimination. Summary judgment is proper as to this claim.

### 2. Plaintiff Fails to Establish His *Prima Facie* Case

Even if Plaintiff's allegations are read to claim that Defendants discriminated against him because he is a person of Indian ethnicity, Plaintiff's evidence still is not sufficient to establish a *prima facie* case of § 1981 racial discrimination. Therefore, this claim cannot survive summary judgment.

A plaintiff must establish three elements to successfully allege a viable claim under § 1981: "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (5th Cir. 1997) (citation omitted); *see also* Arguello v. Conoco, Inc., 330 F.3d 355, 358 (5th Cir. 2003) (quoting Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 751 (5th Cir. 2001)). Assuming that Plaintiff has plead that he was discriminated against because of his ethnicity, he has adequately raised issues for the first two elements. Plaintiff's argument runs aground at the third element, however.

In this case, the enumerated activity at issue is the Plaintiff's ability "to make and enforce contracts." 42 U.S.C. § 1981(a) (2005). Plaintiff claims that Defendants "discriminated against [him] . . . in a manner that would deprive . . . him of any contractual opportunity or adversely affect his contractual status." Plaint. Original Complaint, ¶ 47 (first ¶ 47). This allegation is the basis which must establish the third element of Plaintiff's § 1981 claim.

However, Plaintiff's problem is that this element leads back into the analysis for claims under Title VII. "Claims of discrimination brought under Title VII and § 1981 require the same proof to establish liability." Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 901 (E.D. Tex. 2004); *see also* Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003) ("[Section] 1981 and Title VII . . . are parallel causes of action."). Moreover, "[w]hen 42 U.S.C. § 1981 and Title VII are alleged as parallel bases of relief, the same *elements* of proof are required for both actions." *Id.* at 891

15

(emphasis added). Therefore, Plaintiff must prove the same four elements as are required for Title VII claims. *See, e.g.*, Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004) (analyzing a § 1981 claim under the four element test); *Lockett*, 337 F. Supp. 2d at 901 ("Therefore, since Plaintiff's Title VII claim fails . . ., Plaintiff's § 1981 claim must also be dismissed." (citation omitted)). These are the same four elements under which summary judgment was determined to be proper for Plaintiff's Title VII claim. *See supra* §§ III.A.2–3. Thus, summary judgment is appropriate as to Plaintiff's § 1981 claim.

### *C. Claim for Intentional Infliction of Emotional Distress*

Plaintiff's third claim is that the individual Defendants "intentionally inflicted emotional distress on" him. Plaint. Original Complaint, ¶ 49. Defendants offer two defenses to this claim. Dkt. No. 12. First, Defendants assert that this intentional infliction of emotional distress ("IIED") claim must fail because it is not independent of Plaintiff's other claims. *Id.* at 18–19. Second, Defendants contend that Plaintiff's claim fails to establish a *prima facie* case of IIED. *Id.* at 19 n.3.

Defendant's first defense asserts that Plaintiff's IIED claim is barred because it is not independent from Plaintiff's § 1981 and Title VII claims. *Id.* at 18–19. Defendants correctly point out that Texas IIED law is intended to be a "gap-filler" tort and does not supplant preexisting statutory claims or common law remedies. *See* Hoffman-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 447 (Tex. 2004). However, the Court has found that Plaintiff's § 1981 and Title VII claims fail as a matter of law. *See supra* §§ III.A–B. This means that these assertions by Plaintiff *do not constitute claims*. If they are not claims, Plaintiff's IIED claim *must* be independent of them. Therefore, Plaintiff's IIED claim does not fail on this basis.[6]

To recover under Texas IIED law, "the plaintiff must prove: 1) the defendant

---

[6]The Court makes no finding regarding whether Plaintiff's IIED claim is preempted by any other state statutes or common law remedies. If it is, then Plaintiff's claim would fail based on this argument. Because Defendants do not argue this point and the Court finds that Plaintiff's claim fails to establish a *prima facie* claim under Texas IIED law, the Court does not reach this issue. *See infra*.

acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the defendant's actions caused the plaintiff emotional distress; and 4) the resulting emotional distress was severe." Gonzales v. Willis, 995 S.W.2d 729, 735 (Tex. App. 1999) (quoting Twyman v. Twyman, 855 S.W.2d 619, 621–22 (Tex. 1993)). In this case, Plaintiff has produced sufficient allegations to raise questions of fact regarding the first and third elements. However, Plaintiff's claim falters on element two and fails completely on element four.

The second element for IIED requires the Defendants to have engaged in "extreme and outrageous" conduct. To satisfy this element, Plaintiff must have endured conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965). There is no bright line regarding "when conduct crosses the line from the category of merely rude and offensive behavior to the category of extreme and outrageous conduct." *Gonzales*, 995 S.W.2d at 735. The determination is subjective. *Id.* However, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Zeltwanger*, 144 S.W.3d at 445 (citing GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex. 1999)). Furthermore, Texas courts have found that allowing a culture that permits insensitive jokes, unfair criticism, and unfairly low evaluations do not constitute "extreme and outrageous" conduct. *Id.* at 449. Refusal to give a reference letter, declining to take reference calls, and bribing an employee to evict a complainant have all been found to be insufficient. Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 817 (Tex. 2005). Conduct may even be "callous, meddlesome, mean-spirited, officious, overbearing, and vindictive" but still fall short of "extreme and outrageous." *Id.* at 817–18. In this case, Plaintiff's assertions, if true, clearly establish that Plaintiff was subjected to offensive behavior. However, despite the offensiveness of Defendants' alleged conduct, the determination of whether this conduct rises to the level of "extreme and outrageous" is questionable at best. The Court will not decide this issue, however, as the Plaintiff clearly fails to establish the fourth element for an

IIED claim.

The fourth element of Texas IIED law requires the Plaintiff to establish that he suffered *severe* emotional distress. In this case, Plaintiff claims that he suffered emotional distress. *See, e.g.*, Plaint. Original Complaint, ¶ 43 ("These reviews have been a source of undue anguish for Plaintiff, as well as embarrassment and defamation . . .."). However, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Gonzales*, 995 S.W.2d at 736 (citing Restatement § 46 cmt. j.). Damage to a plaintiff's reputation and feelings of anger, depression, and humiliation are not enough. *Id.* at 736–37. In addition, the Plaintiff must give "indication of the intensity or duration of the emotional distress." *Id.* at 737. Here, Plaintiff has failed to indicate that he suffered any *severe* emotional distress, let alone the severity or duration of such severe distress. "The evidence is therefore legally insufficient to establish severe emotional distress." *Id.* Thus, Plaintiff's claim under Texas IIED law must fail.

Finally, this Court notes that the Texas Supreme Court has demonstrated the difficulties in establishing a sufficient IIED claim in Texas: "For the tenth time in little more than six years, we must reverse an intentional infliction of emotional distress claim for failing to meet the exacting requirements of that tort." *Creditwatch*, 157 S.W.2d at 815. Referring to "heinous acts," the Texas high court also stated that "except in circumstances bordering on serious criminal acts, we repeat that such acts will rarely have merit as intentional infliction claims." *Id.* at 818. Based on this precedent, this Court finds that Plaintiff's IIED claim fails as a matter of law and that summary judgment is appropriate on this claim.

### D. Claim of Negligence

Finally, Plaintiff claims that Defendant VBMC is liable under a theory of negligence. Plaint. Original Complaint, ¶ 50. Plaintiff does not actually state *how* VBMC was negligent. However, this Court will construe this claim in conjunction with Plaintiff's assertion in ¶ 41, and the Court therefore understands Plaintiff as claiming that Defendant VBMC was negligent in supervising, retaining, and training the

individual Defendants. *Id.* at ¶ 41 ("Plaintiff's complaints were only superficially addressed by Defendants and were otherwise ignored."). However, because this Court has found no actionable tort which the individual Defendants committed against Plaintiff, his claim for negligence is "precluded as a matter of law." *See Gonzales*, 995 S.W.2d at 732, 739–40. Thus, summary judgment is appropriate as to this claim.

### IV. Costs and Attorney's Fees

In their Motion for Summary Judgment, Defendants request this Court to award them costs and attorney's fees. Dkt. No. 12, at 21. This Court may, in its discretion, award reasonable attorney's fees to a prevailing party in Title VII and § 1981 cases. *See* 42 U.S.C. § 1988(b); 42 U.S.C. § 2000e-5(k). "[C]ourts interpret [these sections] in tandem when addressing the propriety of awarding attorney fees to a prevailing civil rights party." Boler v. Space Gateway Support Co., 290 F. Supp. 2d 1272, 1279 (M.D. Fla. 2003). A different standard applies depending on whether the plaintiff or the defendant is successful. *Id.* "A prevailing defendant may recover its attorney's fees only where it establishes that the plaintiff's actions were frivolous, unreasonable, or without foundation, even though the action was not brought in subjective bad faith." *Id.* (citing Hensley v. Eckerhart, 461 U.S. 424, 429 n.2 (1983); Christianburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978); Cone Corp. v. Hillsborough County, 157 F.R.D. 533, 540 (M.D. Fla. 1994)). Although cases decided in favor of the defendant on summary judgment are typical "frivolity" cases, an award of summary judgment does not, by itself, entitle the defendant to costs and attorney's fees. *Id.* at 1279, 1280. Courts are "reluctant to award fees unless the plaintiffs refused to acknowledge clear precedent or asserted a claim which was based knowingly on a nonexistent interest." *Id.* at 1280 (citations omitted).

This Court finds no reason to grant costs and attorney's fees to Defendants in this case. Although this Court has determined that summary judgment is appropriate, it finds no refusal to acknowledge precedent or assertions of interests which Plaintiff knew were nonexistent. In any case, this Court declines to exercise its discretion in favor of an award of fees and costs.

**V. Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. Dkt. No. 12. Therefore, the Court **DISMISSES WITH PREJUDICE** all of Plaintiff's claims against the Defendants. The Court instructs the Clerk to close this case.

Furthermore, the Court **DENIES** Defendants' request for costs and attorney's fees.

DONE at Brownsville, Texas, this 13th day of October, 2005.

*/s/ Hilda Tagle*

Hilda G. Tagle
United States District Judge